## ADAMS v. PENNSYLVANIA R. CO.
### No. 7503.

Circuit Court of Appeals, Seventh Circuit.
Feb. 10, 1941.

Richard S. Teeple, James M. Barrett, Jr., J. A. Bruggeman, and Fred E. Zollars, all of Fort Wayne, Ind., for appellant.

Chas. M. Lundin, Wm. J. Reed, and Paul E. Reed, all of Knox, Ind., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

The appellee, who was the plaintiff below, brought this action against the appellant to recover damages for personal injuries alleged to have been received by him because of the negligent conduct of the appellant. The cause was tried to a jury, resulting in a verdict and judgment in appellee's favor. Appellant's motion for a new trial having been overruled, it now prosecutes this appeal.

One of the charges of negligence and the theory upon which the case was tried, was that Main Street in the town of North Judson, Indiana, where it crosses appellant's railroad tracks, was a level street; that Main Street on the west side of the tracks sloped toward the tracks; that the foot of the incline was 5 feet from the west track; that for three days prior to January 26, 1937, appellant had negligently and knowingly allowed snow and ice to accumulate upon said crossing, thus making it extremely icy; and that by reason of the icy condition of the incline the driver of the truck in which appellee was a guest was unable to stop its progress down the incline and it was struck by appellant's locomotive.

This appeal squarely presents the correctness of the following instruction to the jury: "If you find from the evidence that the crossing of defendant's railroad on Main Street in North Judson was covered with ice so as to be unsafe for travel on the day and date here in question, and if the defendant railroad company knew or had reason to know of such condition and had a reasonable opportunity to make such crossing reasonably safe for use by the traveling public, then if the defendant railroad company failed to use such means as a reasonably prudent person would have used under like conditions and circumstances to make such crossing reasonably safe for the traveling public, failure to do so would be negligence." The facts pertinent to the proper disposition of this assigned error, follow.

Main Street is surfaced with brick, is 30 feet wide, runs east and west, and crosses the railroad tracks in question at substantially right angles. Its west approach inclines slightly toward the cross-

ing which is protected by flasher lights, the top of the incline or hill is about 115 feet from the particular track upon which the collision occurred, the view up and down the tracks for over 50 feet before the point of collision is unobscured, and the incline has a total rise of 3-2/10 feet. On the day of the collision the crossing, which consisted of five tracks and one siding, was in good condition and repair and free from construction defects or grading faults. In the early part of the afternoon of January 26, 1937, Charles Hurlburt was driving his truck eastward on Main Street, and the appellee rode with him as guest passenger. He approached the crossing at 10 to 12 miles per hour and saw the locomotive (which was traveling not over 30 to 35 miles an hour) before he reached the first track which was about 35 feet from the track upon which the collision occurred. At that time all of Main Street, including the approaches and crossing, were a slippery "glare of ice" arising from natural causes, and had been in that icy condition for several days. Hurlburt applied his brakes but the chainless and treadless tires refused to hold. It is plain that he was unable to stop because of the icy condition of the street, crossing and approaches. As Hurlburt himself stated it: "When I started down I could not control my truck. I tried to turn the wheels off when I saw I couldn't stop but they wouldn't turn. I just kept sliding down. I put on the brakes and threw it out of gear and it would not hold."

It is obvious that the jury instruction complained of in this case, is based on the essential thought that under the applicable law the railroad has a duty to keep its crossing and approaches free of ice, if it has reason to know of the icy condition and possesses reasonable means to remove the condition. It follows that the instruction is erroneous if there is no duty to remove the icy condition caused by the elements.

In Indiana municipal corporations are required to exercise reasonable care to maintain their streets in proper condition. They are duty bound to remove defects from the streets so that users thereof may not suffer injury. McQueen v. City of Elkhart, 14 Ind.App. 671, 675, 43 N.E. 460. This policing of the streets carries with it responsibility for the proper conditioning of railroad crossings within the corporate boundaries. City of Hammond v. Jahnke, 178 Ind. 177, 99 N.E. 39. At page 189 of 178 Ind., 99 N.E. at page 43, the Court stated that: "The liability of a municipal corporation cannot be evaded because of the statutory duty of a railroad company to keep its crossings in safe condition for travel. The duty of a city to exercise reasonable care to keep its streets in proper condition, or compel a railroad company to do so, is a primary duty." See also City of Bloomington v. Chicago, etc., R. Co., 52 Ind.App. 510, 98 N.E. 188. On page 517 of 52 Ind.App., 98 N.E. at page 191 the Court stated that: "As between the city and the public, the city occupies the position of a guarantor for the [railroad] company that it will not be negligent, and the city is primarily liable to a traveler on its streets who becomes injured on account of a defect therein."

On the other hand, this duty to keep streets reasonably free from defects therein, does not extend to defects in the streets due to natural accumulation of ice. Johnson v. City of Evansville, 95 Ind.App. 417, 424, 425, 180 N.E. 600; McQueen case, supra. In the latter case at page 679 of 14 Ind.App., 43 N.E. at page 462, the Court declared that: "The City is not answerable for the fall of snow, and we know of no holding in this state which imposes upon a city the duty of removing from its streets and sidewalks all snow that falls or ice that forms thereon." See also City of Michigan City v. Rudolph, 104 Ind.App. 643, 647, 12 N.E.2d 970. Reason and logic compel the conclusion that if the municipal corporation would not be liable for the icy condition of the crossing, the proper condition of which it is primarily responsible, then the railroad company is not liable. We conclude therefore that no duty to remove the icy condition rested on appellant railroad in this case, nor does the Indiana statutory and case law require a different result.

Appellee cites Seybold v. Terre Haute & Indianapolis R. Co., 18 Ind.App. 367, 46 N.E. 1054, for the proposition that this duty rests upon the railroad. This case did not decide that a railroad must remove from its crossings an icy condition arising from natural causes. Rather the case turned completely on the failure of the railroad to remove a grading or construction defect in its crossing which presented to travelers a dangerous hazard when covered with snow or ice. See Seybold

case, 18 Ind.App. at pages 379, 383, 385, 386, 46 N.E. 1054. Appellee also relies on Wabash R. Co. v. De Hart, 32 Ind.App. 62, 63, 66, 65 N.E. 192, but the answer to the dictum therein pointed out is contained in Union Traction Co. v. Berry, 188 Ind. 514, 121 N.E. 655, 124 N.E. 737, 32 A.L.R. 1171. It is our thought in the matter that the jury instruction in question is ·erroneous.

Since it appears that liability may also have been grounded on statutory signal and flasher light violations (although from here the testimony relating thereto is certainly not strong), we are reversing and remanding the case to proceed in conformity with this opinion.

Reversed and remanded.